GABRIEL CAPITAL, L.P., a Delaware Limited Partnership, and Ariel Fund Ltd., a Cayman Islands Corporation, Plaintiffs,

v.

NATWEST FINANCE, INC., f/k/a Gleacher NatWest Inc.; NatWest Capital Markets Limited; National Westminster Bank PLC; McDonald Investments Inc., f/k/a McDonald & Company Securities, Inc.; and Steel Dynamics Inc., Defendants.

NatWest Finance, Inc., Third–Party Plaintiff,

v.

John W. Schultes, and Gabriel Capital Corporation, and Selin Cebeci, and Jack Mayer, and Ezra Merkin, and John Does 1–50, Third–Party Defendants.

No. 99 Civ. 10488(SAS).

United States District Court, S.D. New York.

Dec. 4, 2000.

James R. Safley, Thomas B. Hatch, Corey L. Gordon, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, David G. Glasser, Levin & Glasser, P.C., New York City, for Plaintiffs Gabriel Capital and Ariel Fund.

Howard Schiffman, Dickstein Shapiro Morin & Oshinsky LLP, New York City, Bruce E. Clark, Michael T. Tomanio, Jr., Jacqueline E. Bryks, Sullivan & Cromwell, New York City, for Defendants NatWest and McDonald.

Walter P. Loughlin, Latham & Watkins, New York City, David Siegel, David I. Gindler, Daniel P. Lefler, Irell & Manella LLP, Los Angeles, CA, Robert S. Walters, Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, IN, for Defendant SDI.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Gabriel Capital, L.P. ("Gabriel Capital") and Ariel Fund, Ltd. ("Ariel Fund") (collectively "plaintiffs") are suing defendants NatWest Finance, Inc. ("NatWest Finance"), NatWest Capital Markets Limited ("NatWest Capital"), National Westminster Bank PLC ("NatWest Bank"), McDonald Investments Inc. ("McDonald"), and Steel Dynamics Inc. ("SDI") for securities fraud arising from plaintiffs' purchase of certain debt securities (the "Notes"). Plaintiffs allege that NatWest Finance, with the other defendants, violated section 10(b) of the Securities and Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, by making or participating in the making of untrue statements and by omitting facts

in order to induce plaintiffs to purchase the Notes. Plaintiffs have also alleged that defendants committed common law fraud, conspired to commit fraud, and aided and abetted fraud, all in violation of New York law.

Earlier this year, this Court granted in part and denied in part SDI's motion to dismiss the Amended Complaint, and denied the motion to dismiss submitted by NatWest Finance and McDonald. *See Gabriel Capital, L.P. v. NatWest Finance, Inc.*, 94 F.Supp.2d 491, 512 (S.D.N.Y.2000) (*"Gabriel I"*). On May 30, 2000, plaintiffs filed their Second Amended Complaint ("SAC"), adding claims against two new defendants—NatWest Capital and NatWest Bank. Additional motions to dismiss the SAC were denied. *See Gabriel Capital, L.P. v. NatWest Finance, Inc.*, 122 F.Supp.2d 407, 437 (S.D.N.Y.2000) (*"Gabriel II"*).

On June 5, 2000, NatWest Finance filed a Third–Party Complaint ("TPC") against John W. Schultes, Gabriel Capital Corporation ("Gabriel Corp."), Selin Cebeci, Jack Mayer, and Ezra Merkin, employees of Gabriel Corp. (collectively the "Employees"), and John Does 1–50, alleging both state and federal claims for indemnification and contribution. Gabriel Corp., the Employees, and plaintiffs now move to dismiss the TPC pursuant to Federal Rules of Civil Procedure 12 and 14.

## I. APPLICABLE LEGAL STANDARDS

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999); *see also Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998) ("The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (quotation marks and citation omitted). Thus, to properly rule on such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences therefrom in the nonmovant's favor. *See Harris*, 186 F.3d at 247. Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.1996) (quotation marks and citation omitted). Moreover, the court must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999). However, the court may also consider documents, while not explicitly incorporated into the complaint, that are "integral" to plaintiff's claims. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir.1991).

Rule 14(a) permits a defendant to sue a third party who may be liable to the defendant for all or part of a plaintiff's claim against that defendant. Rule 14(a) provides in pertinent part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to [it] for all or part of the plaintiff's claim against [it].

Fed.R.Civ.P. 14(a).

In order to bring a third party action the defendant must plead that if it is liable to the plaintiff, then the third party is liable to it. *See Stratagem Dev. Corp. v. Heron Int'l*, 153 F.R.D. 535, 549 (S.D.N.Y.

1994). Rule 14(a) requires that the third-party defendant's liability be derivative of or secondary to that of the defendant in the main action. *See id.* at 544. Thus, the third party's liability must be "dependent upon the outcome of the main claim" or the third party must be "potentially secondarily liable as a contributor to the defendant." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 (2d Cir.1984).

## II. BACKGROUND

This Court has already exhaustively summarized the allegations in the Amended Complaint, *see Gabriel I,* 94 F.Supp.2d at 495–98, and the SAC, *see Gabriel II,* 122 F.Supp.2d at 411–17. Because the TPC relies on the facts alleged in the SAC, familiarity with those facts is assumed. Nevertheless, a brief review of the underlying facts giving rise to the TPC is required.

NatWest Finance was the "initial purchaser" of Notes guaranteed by Nakornthai Strip Mill Company, Ltd. ("NSM"), a company that operated a steel mill in Thailand. *See Gabriel II,* 122 F.Supp.2d at 411–12. NatWest Finance, McDonald, and SDI prepared an offering memorandum (the "Offering Memorandum") and other written sales material, and made presentations at road shows, that induced plaintiffs to purchase "$15.5 million in principal value of 12% NSM Senior Steel Mortgage Notes due 2006." *Id.* at 415–16. This purchase took place on or about March 2, 1998. *See id.* Plaintiffs have alleged that many of the statements made by NatWest Finance, McDonald, and SDI were knowingly or recklessly false and misleading. *See* SAC ¶¶ 48–64.

Third-party plaintiffs allege that Schultes, who was the President and CEO of NSM, "was the source of and/or confirmed the accuracy of the statements about which ... plaintiffs now complain." TPC ¶ 27. Furthermore, third-party plaintiff "reasonably and justifiably relied on ... Schultes for the accuracy of such statements and information." *Id.*

Gabriel Corp. is a subsidiary of Gabriel Capital and served as plaintiffs' investment advisor. *See id.* ¶ 12. Selin Cebeci was an analyst for Gabriel Corp. and Jack Mayer was a portfolio manager for Gabriel Corp. *See id.* ¶¶ 13–14. Cebeci and Mayer performed research, analysis, and/or due diligence for the plaintiffs regarding the Notes, and made investment decisions for the plaintiffs regarding purchase of the Notes. *See id.* Ezra Merkin was President of Gabriel Corp. and allegedly made the decision to invest in the Notes. *See id.* ¶ 15. John Does 1 through 50 are currently unknown to third-party plaintiff. *See id.* ¶ 17. Gabriel Corp. and its Employees purchased $15.5 million in principal amounts of the Notes for plaintiffs. *See id.* ¶ 35.

Third-party plaintiffs also allege that, "pursuant to contract, common law, and statute," *id.* ¶ 32, Gabriel Corp. and each of the Employees owed duties to plaintiffs. These duties include the duty to:

a. Exercise prudence, caution and care in recommending and purchasing debt securities for their customers;

b. Conduct a thorough and reasonable investigation or review so as to learn all material facts regarding an issuer and its debt securities prior to purchasing such securities for their customers;

c. Continuously and actively monitor investments made on behalf of their customers and to take appropriate action depending on economic and market factors relating to the investment plans and the particular investments held in any debt securities;

d. Continuously and actively monitor investments made on behalf of their customers and to take appropriate action upon discovering material negative information regarding an issuer and its debt securities, including selling the securities and/or disclosing the information obtained to their customers; and

e. Discharge their fiduciary responsibilities of care and loyalty to their customers.

*Id.*

The TPC contends that Gabriel Corp. and the Employees were put on notice that the duty to uncover any misrepresentations contained in the Offering Memorandum belonged to them because the Offering Memorandum included the following disclaimer:

In making an investment decision, investors must rely on their own examination of the issuers and the company and the terms of the offering including the merits and risks involved. The contents of this Offering Memorandum are not to be construed as legal, business or tax advice. Each investor should consult with its own advisors as to legal, tax, business, financial and related aspects of an investment in the securities.

*Id.* ¶ 31.

Third-party plaintiffs allege that Gabriel Corp. and the Employees were negligent or reckless in two respects. *First,* they failed to "exercise ... reasonable diligence and investigation prior to the ... decision to purchase the Notes." *Id.* ¶ 33. *Second,* they continued to purchase the Notes for plaintiffs even after the Notes substantially decreased in value. *Id.* ¶ 36. In fact, the TPC alleges that Gabriel Corp. purchased $2 million of shares of Notes on October 27, 1998,[1] notwithstanding the allegation in the SAC that the "true" facts regarding NSM were publicly disclosed in early October 1998. *See id.*

The TPC asserts five claims, only two of which are relevant to this motion.[2] Claims IV and V seek indemnification or contribution from Gabriel Corp. and the Employees. Each claim alleges that these third-party defendants "disregard[ed] ... or fail[ed] to investigate, determine and monitor, the true facts and developments relating to NSM and the steel mill project" and that these omissions "constituted recklessness and/or negligence, and/or breach of contract and/or breach of their fiduciary duties to the ... Plaintiffs." *Id.* ¶ 63.

## III. DISCUSSION

### A. Third–Party Plaintiff's Contribution Claims

#### 1. Contribution under Federal Securities Law

A third-party plaintiff seeking contribution for liability under the federal securities laws must plead that the third-party defendant itself violated federal securities laws. *See Monisoff v. American Eagle Inv., Inc.,* 955 F.Supp. 40, 41 (S.D.N.Y.1997); *see also Department of*

---

1. The allegation that Gabriel Corp. purchased an additional $2 million of shares of Notes on October 27, 1998 is contrary to the allegations in the SAC that the entire $15.5 million in principal value of Notes were purchased on or about March 2, 1998. *See* SAC ¶ 18. Nevertheless, the allegation in the TPC is assumed to be true for the purposes of this motion.

2. The first three claims seek contribution or indemnification from Schultes. *See* TPC ¶¶ 41–57. Because the facts underlying the claims against Schultes differ from the facts underlying the claims against Gabriel Corp. and the Employees, this motion does not affect the first three claims. Furthermore, Schultes has not joined in this Motion to Dismiss and has not filed one of his own.

*Econ. Dev. v. Arthur Andersen & Co.,* 747 F.Supp. 922, 934 (S.D.N.Y.1990). As this Court recently stated:

> A claim for contribution under the federal securities laws ... requires a third-party plaintiff to allege all the elements of the offense[,] ... namely that the Third–Party Defendants either knowingly or reckless[ly] made material misrepresentations to the [injured parties] on which [these parties] relied in the purchase of the [securities] and which proximately caused loss to [the parties].

*Fromer v. Yogel,* 50 F.Supp.2d 227, 235 (S.D.N.Y.1999) (quoting *Ades v. Deloitte & Touche,* No. 90 Civ. 4959, No. 90 Civ. 5056, 1993 WL 362364, at *10 (S.D.N.Y. Sept. 17, 1993)) (alterations in original).

██ To state a claim under section 10(b) and Rule 10b–5,[3] plaintiffs must allege that in connection with the purchase or sale of securities: (1) defendants made a false material misrepresentation or omitted to disclose material information; (2) defendants acted with scienter; and (3) plaintiffs detrimentally relied upon defendants' fraudulent acts. *See Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 534 (2d Cir.1999).

██ In addition, securities fraud actions are subject to the heightened pleading requirements of Rule 9(b):

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b); *see also Chill v. General Elec. Co.,* 101 F.3d 263, 267 (2d Cir. 1996) ("[T]he actual fraudulent statements or conduct and the fraud alleged must be stated with particularity."). The Second Circuit has emphasized that "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.'" *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995) (quoting *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990)). "Plaintiffs still have the 'burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'" *Chill,* 101 F.3d at 267 (quoting *Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir.1994)).

Motivated by a perceived need to curtail the filing of meritless lawsuits, Congress amended the 1934 Act through passage of the Private Securities Litigation Reform Act ("PSLRA") in 1995. *See Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir.2000). The PSLRA raised the nationwide pleading standard to that previously employed in the Second Circuit. *See id.* at 310. With respect to scienter, the PSLRA requires that

> [i]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with

---

**3.** Section 10(b) makes it unlawful:

[t]o use or employ, in connection with the purchase or sale of any security ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

Rule 10b–5 sets forth specific practices that are considered "manipulative or deceptive." *See* 17 C.F.R. § 240.10b–5. Among other things, Rule 10b–5 provides that "[i]t shall be unlawful ... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2).

 It is well established that plaintiffs cannot plead scienter based on speculation and conclusory allegations. Plaintiffs "must allege facts that give rise to a strong inference of fraudulent intent." *Acito*, 47 F.3d at 52; *see also Novak*, 216 F.3d at 311 (PSLRA adopted Second Circuit's strong inference standard). Such an inference arises where plaintiffs allege either (1) facts showing that defendants had both motive and opportunity to commit fraud,[4] or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir.2000). Accordingly, the required inference of fraudulent intent arises where the complaint sufficiently alleges that the defendants:

> (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor.

*Novak*, 216 F.3d at 311.

 Relying on the last of these four categories, NatWest Finance argues that Gabriel Corp. and the Employees were reckless in failing to check information they had a duty to monitor.[5] *See* Memorandum in Opposition to Joint Motion to Dismiss NatWest Finance, Inc.'s Third–Party Complaint ("Opp.Mem.") at 6. This argument is untenable for two reasons. *First*, Gabriel Corp. and the Employees had no duty to uncover the material misrepresentations at issue here. *Second*, the TPC fails to allege that Gabriel Corp. and the Employees acted with the requisite degree of recklessness. Each argument is discussed below.

### a. The Scope of an Investment Advisor's Duties

In seeking to determine the scope of an investment advisor's duty, the two examples provided by the *Novak* court in illustrating the fourth category are instructive. The first case cited is *Rolf v. Blyth, Eastman Dillon Co., Inc.*, 570 F.2d 38 (2d Cir.1978). There, the defendant-broker "reassured the plaintiff that the investment advisor responsible for the plaintiff's portfolio 'knew what he was doing' but never actually investigated the advisor's decisions to determine 'whether there was a basis for the [defendant's] assertions." *Novak*, 216 F.3d at 309 (quoting *Rolf*, 570 F.2d at 47–48). In *Rolf*, the court addressed the duties of a broker and concluded that a broker has a duty to determine whether the statements she makes to her client has any basis in fact.

---

4. "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir.1994).

5. Third-party plaintiffs have not alleged that Gabriel Corp. or the Employees had a motive to commit fraud. Indeed, one would be hard pressed to find motive on their part. "In looking for a sufficient allegation of motive, we assume that the defendant is acting in his or her informed economic self-interest." *Shields*, 25 F.3d at 1130. Because Gabriel Corp. is a subsidiary of plaintiffs and the Employees all work for Gabriel Corp., their economic motivation is directly aligned with that of plaintiffs.

 The second case cited in *Novak* is *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir.1998). In that case, "the defendant [a corporate director] allegedly included false statements in SEC filings despite 'the obviously evasive and suspicious statements' made to him by the corporate officials upon whom he was relying for this information and despite outside counsel's recommendation that these statements not be included." *Novak*, 216 F.3d at 309 (quoting *McNulty*, 137 F.3d at 741). Obviously, corporations and their officers and directors have a duty not to disseminate statements that are "obviously suspicious" and not to ignore the advice of outside counsel.

The facts alleged in the TPC are quite different. NatWest Finance complains that Gabriel Corp. and its Employees "failed to conduct sufficient due diligence to determine that there was a reasonable basis for the factual assertions alleged to be materially false and misleading." TPC ¶ 66. There is no allegation that they failed to review the Offering Memorandum before advising their client to purchase the Notes. Nor is there any allegation that they failed to consider whether this type of investment was appropriate for their clients' needs and investment strategy. Third-party plaintiff fails to cite a single case that requires an investment advisor to conduct an independent investigation as to the accuracy of the statements made in an offering memorandum when there is nothing that is obviously suspicious about those statements. In the absence of such allegations, the third-party defendants could not have "failed to review or check information that they had a *duty* to monitor." *Novak*, 216 F.3d at 311 (emphasis added).

In an effort to allege that Gabriel Corp. and its Employees had a duty to monitor the information disseminated by NatWest Finance, third-party plaintiff relies on cases involving recommendations by an investment advisor of "unsuitable" investments. NatWest Finance argues that "the well-established law of this Circuit [is that] an allegation that an investment advisor knowingly recommended an unsuitable securities transaction to its client states a cause of action for fraud under Rule 10b–5." Opp. Mem. at 6–7 (citing *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 600 (2d Cir.1978)). This doctrine, however, is inapposite.

The unsuitability violation of Rule 10b–5 is based on Article III, Section 2, of the National Association of Securities Dealers ("NASD") Fair Practice Rules which states:

> In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer [sic] as to [its] other security holdings and as to [its] financial situation and needs.

Rule 405 of the New York Stock Exchange ("NYSE"), commonly referred to as the "Know Your Customer Rule," or the "Rule of Due Diligence," requires NYSE members to "learn the essential facts relative to every customer" or margin account and "to supervise diligently all accounts handled by registered representatives of the organization." *Starkman v. Seroussi*, 377 F.Supp. 518, 520–21 (S.D.N.Y.1974) (quotation marks omitted).[6] A violation of this

---

6. Rule 405 provides in pertinent part:

Every member organization is required through a general partner, a principal executive officer or an officer who is a holder of voting stock to:
(1) use due diligence to learn the essential facts relative to every customer, every or-

rule has been held to constitute a violation of the federal securities laws. *See John Lamula Investors, Inc.*, 583 F.2d at 600.

While the third-party plaintiff correctly argues that the knowing and intentional recommendation of an unsuitable investment or the purchase of an unsuitable security for a discretionary account has been held to constitute a violation of Rule 10b-5, there is no allegation here that Gabriel Corp. or the Employees knowingly recommended an investment transaction that did not match the plaintiffs' investment strategy or financial needs. NatWest Finance, citing *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 424 F.Supp. 1021, 1042 (S.D.N.Y.1977), *aff'd*, 570 F.2d 38 (2d Cir.1978), contends that

> an investment advisor's failure to inform its customer that it is not going to perform its due diligence obligations or form any independent objective basis for the securities purchases that it makes on its client's behalf constitutes an omission sufficient to state a cause of action under Rule 10b-5.

Opp. Mem. at 7. But *Rolf* offers no support for this argument. As discussed above, the *Rolf* court held that a broker's statements of support and confidence in an investment advisor and in the decisions being made by that advisor, without any attempt to discern the investor's intentions and goals, or to determine if there was any basis in fact for the statements of support that the broker made to the investor, constituted the requisite scienter to sustain a violation of Rule 10b-5. *See Rolf*, 424 F.Supp. at 1042. No case relied on by

NatWest Finance supports the proposition that Rule 10b-5 is violated when an investment advisor fails to investigate the accuracy of representations in an offering memorandum or road show, or fails to inform its client that it will not investigate the accuracy of those representations. Indeed, such a requirement should not be imposed. An investment advisor is retained to suggest appropriate investments for its clients, but is not required to assume the role of accountant or private investigator and conduct a thorough investigation of the accuracy of the facts contained in the documents that it analyzes for the purpose of recommending an investment. The investment advisor is not the author of those documents and does not purport to certify the accuracy of those documents. This Court will not impose such an obligation on the class of investment advisors.

### b. Recklessness

The standard for recklessness under the federal securities laws requires that a defendant's actions "must have been 'highly unreasonable,' representing 'an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Rothman*, 220 F.3d at 90 (quoting *Rolf*, 570 F.2d at 47) (alterations omitted). "Where third-party advisers are concerned, to meet such a standard the allegations must 'approximate an actual intent to aid in the fraud being perpetrated by the [ ] company.'" *In re WRT Energy*

---

der, every cash or margin account accepted or carried by such organization ...;

(2) supervise diligently all accounts handled by registered representatives of the organization;

(3) specifically approve the opening of an account prior to or promptly after the completion of any transaction ... The member,

general partner, officer or designated person approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval....

*Sec. Litig.*, No. 96 Civ. 3610, 96 Civ. 3611, 1999 WL 178749, at *9 (S.D.N.Y. Mar. 31, 1999) (quoting *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 121 (1982)); *see also In re Leslie Fay Cos. Sec. Litig.*, 835 F.Supp. 167, 173 (S.D.N.Y.1993) (recklessness must be shown to such an extent that a reasonable finder of fact could actually infer fraudulent intent from it). Where a plaintiff relies on allegations of recklessness—as opposed to motive and opportunity—to plead fraudulent intent, "the strength of the circumstantial allegations must be correspondingly greater." *In re WRT Energy Sec. Litig.*, 1999 WL 178749, at *8 (citing *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987)).

■■■ The TPC alleges that Gabriel Corp. and the Employees acted recklessly in (1) failing to exercise due diligence prior to the decision to purchase the Notes, and (2) continuing to purchase the Notes for plaintiffs after learning of material misrepresentations in the offering documents. *See supra* Part I.

With respect to the first allegation, third-party plaintiff relies on conclusory assertions that in no way provide the degree of particularity required to prove scienter. For instance, the TPC alleges that

> [i]f, as the … Plaintiffs assert, the alleged misrepresentations in NSM's Offering Memorandum and Schultes' statements at the presentation … could have been determined to be false through the exercise of reasonable diligence and investigation prior to [Gabriel Corp.'s and the Employees'] decision to purchase the Notes, [Gabriel Corp. and the Employees] (and not NatWest) were negligent or reckless in failing to do so. . . .

TPC ¶ 37.

This conclusory allegation fails to state any particularized facts which might support the conclusion that by March 2, 1998—the date on which the Notes were purchased for plaintiffs—Gabriel Corp. or the Employees were either aware of a grave risk or could have discovered such a risk through the exercise of reasonable diligence. This allegation does not constitute the required "strong circumstantial evidence of … recklessness … [which] gives rise to a strong inference of fraudulent intent." *Chill*, 101 F.3d at 269 (quotation marks and citations omitted).

■■■ Furthermore, third-party plaintiff's contention that the allegations of scienter which plaintiffs made against NatWest and which the Court has deemed to be sufficient, must also state a claim for contribution against Gabriel Corp. and the Employees, fundamentally misconstrues the claims against NatWest Finance. NatWest Finance is alleged to have been a direct participant in the alleged fraud. The SAC alleges that NatWest Finance had direct access to documents from which it knew, or was reckless in not knowing, that the statements in the Offering Memorandum were materially false and misleading. *See* SAC ¶¶ 41, 42. NatWest also had "visited the NSM facility prior to the offering and [was] aware of, or [was] reckless in not discovering, the serious deficiencies at NSM that were being concealed from investors." SAC ¶ 42. In contrast, the TPC does not allege that Gabriel Corp. and the Employees had access to these same documents or had visited the NSM facility. Moreover, the allegations of recklessness required to show scienter by one who disseminates misrepresentations—which is plaintiffs' allegation against NatWest—are not the same as those for one who fails to discover those misrepresentations—the allegation against Gabriel Corp. and the Employees. One cannot have acted recklessly unless one has breached a

duty. Here, third-party defendants had no duty to investigate the representations in the documents they received. *See supra* Part III.A.1.a.

■ NatWest Finance's second allegation is also insufficient to sustain a claim of recklessness. Even assuming, arguendo, that Gabriel Corp. and its Employees purchased additional Notes after learning of material misrepresentations in the Offering Memorandum, this allegation cannot support a claim for contribution. As an initial matter, because the SAC does not seek recovery for any purchases alleged to have occurred in October 1998, *see supra* note 1, there can be no award of damages for which NatWest Finance could seek contribution. *See Unilease Computer Corp. v. Major Computer Inc.,* 126 F.R.D. 490, 492 (S.D.N.Y.1989) (" '[F]or impleader to be available ... the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant....' Thus, under Rule 14 a third-party plaintiff's claim against a third-party should accrue only upon a finding of defendant's liability to the plaintiff on the main claim.") (citations omitted).

■ In addition, contribution is "designed to achieve a fair distribution of fault among parties involved in a wrong." *Fromer v. Yogel,* 50 F.Supp.2d 227, 237 (S.D.N.Y.1999) (quotation marks and citations omitted). However, NatWest Finance's theory of contribution is precisely the opposite of shared liability. Third-party plaintiff's theory is that it should not be found liable because Gabriel Corp. and the Employees—who were acting as plaintiffs' agents in purchasing the Notes [7]— could not have justifiably relied on the material misrepresentations. If there was no justifiable reliance by the plaintiffs, then NatWest Finance has a complete defense to liability. *See Harsco Corp. v. Segui,* 91 F.3d 337, 342 (2d Cir.1996) ("Justifiable Reliance is a limitation on a rule 10b–5 action which insures that there is a causal relationship between the misrepresentation and the plaintiff's harm."). Therefore, with respect to the October 1998 purchase of the Notes, the third-party plaintiff is not alleging that third-party defendants share fault, but that third-party defendants were completely at fault. A third-party plaintiff cannot "bootstrap a defense to fraud into a case for joint tortfeasor liability." *Fromer,* 50 F.Supp.2d at 237 (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 92 Civ. 6879, 1998 WL 647167, at *5 (S.D.N.Y. Sept. 22, 1998)).

### 2. Contribution Under New York State Common Law

NatWest Finance seeks contribution from Gabriel Corp. and the Employees should it be held liable to plaintiffs on their common law fraud claim. Pursuant to N.Y. C.P.L.R. § 1401 (McKinney 1997),[8] NatWest Finance asserts a claim for contribution under various theories—recklessness, negligence, breach of fiduciary duty, and breach of contract. *See* TPC ¶ 67.

#### a. Recklessness

■ To prevail on their claim of fraud, plaintiffs must have justifiably relied upon

---

7. Both plaintiffs and the third-party defendants agree that Gabriel Corp. and the Employees were agents of plaintiffs. *See* Memorandum of Law in Support of Joint Motion to Dismiss Defendant NatWest Finance, Inc.'s Third–Party Complaint at 2; Opp. Mem. at 18.

8. Under N.Y. C.P.L.R. § 1401, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."

NatWest Finance's misrepresentations. *See AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 208 (2d Cir.2000) ("In New York State, to prove a fraud claim, a plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, *justifiable reliance of the other party on the misrepresentation or material omission,* and injury.") (quotation marks omitted and emphasis added). Because culpable conduct by an agent is imputed to the principal, any recklessness by Gabriel Corp. and the Employees would eliminate NatWest Finance's liability, and thus obviate the need for contribution. *See Connell v. Weiss*, No. 84 Civ. 2660, 1985 WL 428, at *4 (S.D.N.Y. Mar. 19, 1985) ("Under the New York comparative negligence doctrine any culpable conduct by Breed Abbott, acting as the Connells' agent, is imputable to the Connells. Thus any recovery by the Connells against Weiss would be subject to an appropriate reduction for their agent's negligence [and][t]here is, therefore, no practical necessity for Weiss to implead Breed Abbott."); *see also New York Islanders Hockey Club, LLP v. Comerica Bank–Texas*, 115 F.Supp.2d 348, 351 (E.D.N.Y.2000) (dismissing third-party complaint against law firm that served as counsel to plaintiff because any culpable conduct of third-party defendant would be attributable to the plaintiff through agency principles) (citing *Connell*, 1985 WL 428, at *4).

No authority has been found or cited permitting a contribution claim against a plaintiff's agent where that claim is identical to defendant's affirmative defense. The cases relied on by NatWest Finance

are easily distinguished. In *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F.Supp. 204, 209 (S.D.N.Y.1993), the court permitted a third-party contribution claim against a wholly-owned subsidiary of the plaintiff company. The court reasoned that because the contribution claim was distinct from any defense based on plaintiff's own culpability, plaintiff's claim and the third-party contribution claim could proceed. By contrast, the contribution claim here is based on the precise conduct that supports an affirmative defense of comparative negligence. In *Rook v. 60 Key Centre, Inc.*, 242 A.D.2d 872, 662 N.Y.S.2d 670, 671 (4th Dep't 1997), the court held that "[a] party actively at fault cannot escape liability merely because another party has been held vicariously liable for the same injury." That case did not involve a third-party defendant who was plaintiff's agent or a third-party complaint raising the same issue raised as a defense to plaintiff's complaint.

**b. New York's Martin Act preempts claims based on negligence and breach of fiduciary duty.**

 New York's Martin Act provides for the attorney general to regulate and enforce New York's securities laws. *See* N.Y. Gen. Bus. Law §§ 352 et seq. (McKinney 1996). It does not require proof of intent to defraud or scienter. *See Granite Partners, L.P., v. Bear, Stearns & Co., Inc.*, 17 F.Supp.2d 275, 291 (S.D.N.Y. 1998). Furthermore, "it is well established that there exists no private right of action for claims that are within the purview of the Martin Act." *Id.* Because NatWest Finance's negligence and breach of fiduciary duty claims are covered by the Martin Act, these claims must be dismissed.[9] *See id.*

---

9. In its claim for breach of fiduciary duty, NatWest Finance has not alleged that Gabriel Corp. and the Employees acted intentionally.

Nor could it allege intentional misconduct because Gabriel Corp. and the Employees had

("[C]laims for breach of fiduciary duty and negligent or innocent misrepresentation, ... which do not require a plaintiff to plead and prove intentional deceit, are covered by the Martin Act and cannot be asserted by private litigants.").

#### c. Breach of contract

 New York does not permit contribution as a result of a third-party's breach of contract.

To permit [contribution], pursuant to CPLR 1401, arising solely from breach of contract would not only be at odds with the statute's legislative history, but also do violence to settled principles of contract law which limit a contracting party's liability to those damages that are reasonably foreseeable at the time the contract is formed.

*Board of Educ. v. Sargent, Webster, Crenshaw and Folley,* 71 N.Y.2d 21, 28, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987); *see also Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 859 F.2d 242, 249 (2d Cir.1988) (dismissing contribution claim because "[t]he only obligations of the third-party defendants whose alleged breach gives rise to claims for contribution were contractual in nature, resulting from their respective subcontracts with [plaintiff]."). Accordingly, NatWest Finance's breach of contract theory is not a valid basis for its contribution claim.[10]

#### B. Third–Party Plaintiff's Indemnification Claims

#### 1. Indemnification Under Federal Securities Law

 NatWest Finance is seeking indemnification from Gabriel Corp. and the Employees based on their alleged failure to perform due diligence with respect to the Offering Memorandum. This failure makes NatWest Finance's liability "constructive, secondary or vicarious to the primary and active negligence and/or recklessness of the Third-party defendant[s] [Gabriel Corp. and the Employees] by, inter alia, breaching the fiduciary duties they owed to the [ ] [p]laintiffs." TPC ¶ 60.

██ Because indemnification shifts the cost of tortious conduct to another party, it cannot apply when the party seeking the indemnification knowingly and willfully violated federal securities laws. *See, e.g., Globus v. Law Research Serv., Inc.,* 287 F.Supp. 188, 199 (S.D.N.Y.1968), *aff'd in pertinent part,* 418 F.2d 1276, 1288–89 (2d Cir.1969) (holding indemnification is not available in an action for securities fraud because "one cannot insure himself against his own reckless, willful or criminal misconduct"); *see also In re Leslie Fay,* 918 F.Supp. at 764–65; *In re Del–Val Fin. Corp. Sec. Litig.,* 868 F.Supp. 547, 553 (S.D.N.Y.1994); *McCoy v. Goldberg,* 778 F.Supp. 201, 203 (S.D.N.Y. 1991); *Stratton Group Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1185 (S.D.N.Y.1979). As this Court recently held, "[s]uch a remedy would allow a tortfeasor to shift liability for intentional misconduct onto another joint tortfeasor and thereby undercut the deterrence goals of the securities laws." *Fromer,* 50 F.Supp.2d at 238. "Because securities fraud requires either recklessness or intentional misconduct, indemnification has been held unavailable under federal securities laws...." *Ades,*

---

no motive to defraud Gabriel Capital. *See supra* note 5.

**10.** Neither the TPC nor the SAC allege that either Gabriel Corp. or the Employees had

contracted with plaintiffs to investigate the truthfulness of representations made by others.

1993 WL 362364, at *22.[11]

The question, then, is whether there is any possibility that NatWest Finance could be liable to plaintiffs without having knowingly and willfully made or participated in making false statements. If NatWest Finance did not knowingly and willfully violate federal securities law, then NatWest will have no liability to deflect. *See Unilease Computer Corp.,* 126 F.R.D. at 492. NatWest Finance, however, argues that it would be inappropriate to dismiss the indemnification claim at this stage of the proceedings, when the ultimate finding of liability is unknown, because Gabriel Corp. and the Employees—not NatWest—may be the primary tortfeasors. *See* Opp. Mem. at 21–23 (citing *Burda Media, Inc. v. Blumenberg,* No. 97 Civ. 7167, 1999 WL 413469, at *9 (S.D.N.Y. June 21, 1999)).

NatWest Finance's argument misconstrues *Burda Media. First,* that court refused to dismiss the defendant's crossclaim for indemnification because the defendant could be found liable to the plaintiff for unjust enrichment, a tort that does not require any showing of either fault or intent. *See Burda Media,* 1999 WL 413469, at *8. By contrast, the only claims asserted against NatWest Finance require a finding of fault. *Second,* in *Burda Media* the court stated that where the only claims against a defendant require a finding of fault, indemnification would be inappropriate. *See id.* at *8 ("Moreover, indemnification is typically appropriate only where the party seeking such indemnification is without fault."). In fact, the court quoted with approval a statement by Judge Leonard Sand in *Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.,* No 90 Civ. 1052, 1992 WL 73473, at *6 (S.D.N.Y. Apr. 1, 1992), which is directly

on point here: "[B]ecause indemnity is unavailable to a party who has himself recklessly or intentionally contributed to a plaintiff's injury, and because ... § 10(b) liability require[s] a finding of intent or scienter, [defendants] are precluded from seeking indemnification in [that] action[ ] as well." *Burda Media, Inc.,* 1999 WL 413469, at *8. Accordingly, because NatWest Finance can only be liable under § 10(b) or Rule 10b–5 if it acted with the required scienter, its indemnification claim under the federal securities laws is dismissed with prejudice.

**2. Indemnification under New York Common Law**

 Third-party plaintiff argues that it is also entitled to indemnification on the common law fraud claims. Under New York law, indemnity is a restitution concept which permits shifting the loss in order to avoid the unjust enrichment of one party at the expense of another. *See McDermott v. City of New York,* 50 N.Y.2d 211, 218–219, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); *Riviello v. Waldron,* 47 N.Y.2d 297, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979). Indemnity claims usually arise from an express agreement by one party to hold the other harmless for claims brought against it by a third party. *See Knight v. H.E. Yerkes & Assocs., Inc.,* 675 F.Supp. 139, 143 (S.D.N.Y.1987). There is no suggestion by NatWest Finance that it is entitled to indemnification because of any express agreement with Gabriel Corp. or the Employees. In the absence of an express contractual provision for indemnification, an implied right of indemnification can be found. *See Trustees of Columbia Univ. in the City of New York v. Mitchell/Giurgola Assocs.,* 109 A.D.2d 449, 492

---

**11.** Surprisingly, NatWest Finance relies on this case in support of its contribution claim. *See* Opp. Mem. at 9.

N.Y.S.2d 371, 374 (1st Dep't 1985). Nat-West Finance's ability to withstand a motion to dismiss is therefore dependent on whether or not any implied right to indemnification exists. *See Burda Media*, 1999 WL 413469, at *6.

■ Under New York law a claim for common law indemnity is barred where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff. *See Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.S.2d 21, 24-25, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985) ("A party who has settled and seeks what it characterizes as indemnification thus must show that it may not be held responsible in any degree."); *Trustees of Columbia Univ.*, 492 N.Y.S.2d at 375 ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine."). NatWest Finance is not entitled to common law indemnification because it cannot be liable to plaintiffs in the absence of wrongdoing.

NatWest Finance asserts that it had adequately shifted "exclusive responsibility" to Gabriel Corp. and the Employees with respect to the NSM investment through a disclaimer in the Offering Memorandum which "explicitly directed potential investors to 'RELY ON THEIR OWN EXAMINATION OF THE ISSUERS AND THE COMPANY.'" Opp. Mem. at 22. However, this Court has already ruled that the disclaimers in the Offering Memorandum were not sufficient, as a matter of law, to negate the plaintiffs' claim of justifiable reliance as to the representations made at the Road Shows and in the Slide presentations. *See Gabriel I*, 94 F.Supp.2d at 507.

■ NatWest Finance's argument regarding the disclaimers may very well be a valid defense, but that defense cannot create a cause of action for indemnity. If the trier of fact determines that the disclaimers shifted the duty to perform due diligence to Gabriel Corp. and the Employees, then plaintiffs' claim against NatWest Finance will fail. If the disclaimers are found to be inadequate to shift responsibility, then NatWest Finance may be liable for intentional misconduct. "[T]o the extent that [the third-party plaintiff] is found to be an intentional tortfeasor or a joint tortfeasor with any fault of its own for the injuries suffered by [Plaintiff], [third-party plaintiff] will not be allowed to seek indemnification." *Burda Media*, 1999 WL 413469, at *9; *see also Academic Indus.*, 1992 WL 73473, at *6 (indemnification is unavailable to third-party plaintiffs in actions for common law fraud and violations of securities laws requiring a finding of scienter); *Department of Econ. Dev.*, 747 F.Supp. at 931 (indemnity is unavailable as to claims where the third-party plaintiff is "found to have recklessly or intentionally contributed to plaintiff's injury").

## C. John Does 1 Through 50

Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The TPC alleges that

[i]f NatWest [Finance] is adjudged liable to the [ ] [p]laintiffs, then each of these Does is liable for the alleged misrepresentations and omissions of material facts and alleged loss suffered by the [ ][p]laintiffs ... thus NatWest [Finance] is entitled to indemnification and/or contribution from each of these Does.

TPC ¶ 17. This paragraph fails to plead a claim against the Doe defendants. I as-

sume, nonetheless, that the theory of liability is the same as that pled against Gabriel Corp. and the Employees. As these claims have been dismissed, there is no reason to allow the TPC to stand against the Does. Therefore, the claims against John Does 1 through 50 are also dismissed.

### D. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely granted when justice so requires." "Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on solid ground." *Oliver Sch., Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir.1991). *Futility provides a solid ground on which to deny leave to amend. See Chill,* 101 F.3d at 272; *Cortec Indus.,* 949 F.2d at 48.

In the absence of a duty by investment advisors to investigate statements made by others in offering memoranda or other documents, third-party plaintiff has no viable legal theory for seeking contribution or indemnification from Gabriel Corp. or the Employees. Similarly, in the absence of sufficient allegations that Gabriel Corp. and the Employees engaged in knowing, intentional or reckless misconduct that cannot be attributed to plaintiffs, no claim for contribution or indemnification can stand. Because third-party plaintiff has not demonstrated that it can amend its TPC to plead viable claims against Gabriel Corp. and the Employees, amendment would be futile.

## IV. CONCLUSION

For the reasons stated above, the Joint Motion to Dismiss the TPC's claims against Gabriel Corp. and the Employees is GRANTED with prejudice. A confer-

ence is scheduled for December 22, 2000 at 4:30 p.m.

SO ORDERED.